1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASON STEWART FERGUSON,

                    Petitioner,

          v.

RON VAN BOENING,

                    Respondent.

Case No.  C07-5615FDB/JKA

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**APRIL 25, 2008**

          This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to
Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4.
Petitioner is challenging 2004 Clark County convictions for second degree murder and first degree
assault.  He was sentenced to 487 months of confinement.   The single issue raised by petitioner in
this action is that the trial court gave an improper jury instruction (Dkt # 5).  The court recommends
the petition be **DENIED** for the reasons stated below.

<u>FACTS</u>

          Petitioner was convicted in Clark County of second degree murder and first degree assault.

1    The Washington State Court of Appeals summarized the facts as follows:

2            On the evening of February 28, 2004, Ferguson was at the Bliss nightclub in
     Vancouver with his girlfriend, Angela Meehan, and his good friend, Jeremy Seley.
3    Exhibit 3, Opinion Published in Part, at 1; State v. Ferguson, 131 Wn. App. 855, 129
     P.3d 856 (2006). The murder victim, Lavell Lindsey, was also at the club that night
4    with his friends L.G. Harvey, Gabriel Hill, Daniel Hahn, and Gregory Dalton. Exhibit
     3, at 1. While at the club, Harvey spoke briefly with Seley, whom he recognized
5    because they had attended the same middle school. The mood at the club that evening
     was generally good. Id.

6
             As the nightclub closed in the early morning of February 29, the patrons
7    started toward their vehic1es. Id. at 2. Ferguson got into the driver's seat of his Ford
     Explorer SUV, with Meehan in the passenger seat, Seley in the back seat behind
8    Ferguson, and another passenger behind Meehan. Id.

9            As Ferguson drove through the parking lot, Seley asked him to stop. Seley
     then called Harvey over to confront him about jumping Seley in junior high. Seley
10   remained in the SUV's back seat and exchanged angry words with Harvey and Hill,
     who were standing outside the SUV. As the argument became more heated, the
11   others in the SUV told Seley to be quiet. Meehan got out of the passenger side to try
     to intervene. Id.
12
             As Meehan got out, Lindsey approached the SUV from the front. Ferguson
13   told Lindsey, "Move, bitch, get out the way [sic]." Id.; Exhibit 13, Report of
     Proceeding, Volume IV-A (10/27/04), at 338. Lindsey responded, "Man, you don't
14   know me, but if you want some, I'm right here." Exhibit 13, at 338. Lindsey then
     took off his shirt. Ferguson took his knife from the console and got out of the SUV.
15   Lindsey started punching Ferguson, and Ferguson responded with the knife. Exhibit
     3, at 2.
16
             As Lindsey and Ferguson fought, Seley saw more people approaching and
17   jumped out of the SUV to support Ferguson. Harvey tackled Seley and both fell into
     the bushes. Thinking Lindsey needed help, Dalton came up to attack Ferguson from
18   behind. Hill saw Ferguson had something shiny in his hand and called to Dalton,
     "Look out, he's got brass knuckles." Id.; Exhibit 13, at 399-400. On hearing this,
19   Ferguson turned around and cut Dalton in the neck with the knife as Dalton was
     swinging at him. Exhibit 3, at 2. Dalton fell into the bushes next to Harvey and Seley.
20   Id.

21           At this point, Lindsey fell backwards, having sustained multiple stab wounds.
     Id. Ferguson and Meehan jumped back into the SUV and Ferguson drove away
22   quickly, leaving Seley. Meehan threw the bloody knife out of the window as the SUV
     left the Bliss's parking lot. Id.
23
             Ferguson circled around looking for Seley but he had run away. Ferguson then
24   drove to an AM/PM gas station nearby, where he and Meehan washed the blood off
     themselves. Two bouncers from the Bliss followed the SUV to the AM/PM, noted the
25   SUV's license plate number, and returned to the nightclub to report it to police. Id. at
     3.
26
             Lindsey's friends did not see that Ferguson had a knife. After the SUV drove
27   away, Hill noticed Lindsey's shirt and one dress shoe on the ground. Hill picked them
     up and put them into Hahn.s car, the car in which Lindsey had been riding. Hill did
28

1   not realize that Lindsey was badly injured. Lindsey's friends called 911 when they saw
    him on the ground bleeding extensively. Id.

2   Lindsey died from the multiple stab wounds. At trial, the medical examiner
3   testified that Lindsey received twelve separate knife wounds, including two in the
    head and six in the back. One stab penetrated Lindsey's skull, and another severed an
4   artery. Doctors treated the knife wound to Dalton's neck, which would have been life
    threatening if not treated. Id.

5   Meehan wrapped the knife's sheath in her blouse and left it on the SUV's
6   floor. Police later arrested her at her house and she told them where she had thrown
    the knife out the window. Police recovered the knife at the scene, a 4.5 inch fixed
7   blade knife with blood on it. The blood on the knife was never tested. The medical
    examiner testified that the knife recovered was consistent with Lindsey's wounds. Id.

8   Around 3:00A.M., police pulled Ferguson over, took him from his vehicle at
9   gunpoint, and handcuffed him as part of a "felony stop." Exhibit 11, Report of
    Proceedings, Vol. II (10/25/04), at 70-71. Noticing that he had a wound on his left
10  leg, police transported Ferguson to the hospital in a patrol car. Exhibit 3, at 3.
    Ferguson remained in handcuffs during his transport and while doctors treated him at
11  the hospital. Police seized Ferguson's clothes at the hospital for evidence. Id.

12  After treatment, police transported Ferguson directly to the Major Crimes
    Unit, located in a secure building. Police removed the handcuffs and told Ferguson he
13  was free to leave. Ferguson was still wearing the hospital gown at this point. Without
    advising Ferguson of his Miranda rights, police interviewed him for approximately
14  one hour. Once Ferguson admitted that the knife police found at the scene belonged
    to him, he was arrested. After placing him under arrest, police read Ferguson his
15  Miranda rights and proceeded to interview him on tape. Id. at 4.

16  Ferguson was charged with second degree murder in Lindsey's death and first
    degree assault of Dalton. The second degree murder instructions allowed conviction if
17  the jury found the elements of intentional second degree murder or if the jury found
    second degree felony murder with second degree assault as the predicate felony. Id.
18  The jury convicted Ferguson of both first degree assault of Dalton and second degree
    murder of Lindsey. The second degree murder verdict was a general verdict that did
19  not specify whether it was based on intentional second degree murder or on felony
    murder. Id.

20  (Dkt. # 16, pages 2 to 4).

21                          PROCEDURAL HISTORY

22  Ferguson appealed his conviction to the Washington Court of Appeals. Exhibit 4, Brief of

23  Appellant; Exhibit 5, Statement of Additional Grounds for Review. The court denied his appeal in a

24  partially published opinion. Exhibit 3. Through counsel, Ferguson petitioned for review in the state's

25  highest court. Exhibit 7, Petition for Discretionary Review. The Washington Supreme Court denied

26  review on December 5, 2006. Exhibit 8, Order.  Petitioner did not file a personal restraint petition or

27  collateral challenge.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>EVIDENTIARY HEARING</u>

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

<u>STANDARD</u>

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  <u>Engle v. Isaac</u>, 456 U.S. 107 (1983).  Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28 U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law.  <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990); <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).   A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

§2254(e)(1).

DISCUSSION

A.    <u>Statute of limitations</u>.

Respondent argues this action is time barred.  The court disagrees.  A one year statute of limitations was imposed under the 1996 amendments to 28 U.S.C. § 2244(d), which were signed into law April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act (AEDPA).   28 U.S.C. § 2244(d) provides as follows:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

(A)    the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's sentence became final 90 days after the Washington State Supreme Court dismissed his direct appeal.  The appeal was dismissed December 5, 2006. The one statute of limitations began to run on March 5, 2007, not March 5, 2006, as respondents claim (Dkt. # 16, page 9).  Petitioner had until March 5, 2008. to file a habeas petition in Federal Court.  This petition was filed November 8, 2007, and is timely.

B.    <u>Exhaustion</u>

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court.  <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir. 1985).  Petitioner raised his jury instruction claim only as a state law claim in his petition for discretionary review (Dkt # 7, Pages 13 to17).  The claim was not argued as a violation of any federally protected right.  There is nothing in the motion for discretionary review to alert the State Supreme Court that it was dealing with anything other than a

state law claim.  A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights.  <u>Duncan v. Henry</u>, 513 U.S.364, 115 S.Ct. 887, 888 (1995).  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.  <u>Id</u>, *citing* <u>Picard v. Connor</u>, 404 U.S. 270 (1971) and <u>Anderson v. Harless</u>, 459 U.S. 4 (1982).  The claim in this petition is unexhausted.

C.      Procedural Bar.

Normally, a federal court faced with an unexhausted or mixed petition dismisses the petition without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court. Now, however, petitioner is barred from filing a petition in state court as any attempt to file another petition will be deemed time barred. RCW 10.73.090 provides:

(1)     No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

(2)     For the purposes of this section, "collateral attack" means any form of postconviction relief other than a direct appeal. "Collateral attack" includes, but is not limited to, a personal restraint petition, a habeas corpus petition, a motion to vacate judgment, a motion to withdraw guilty plea, a motion for a new trial, and a motion to arrest judgment.

(3)     For the purposes of this section, a judgment becomes final on the last of the following dates:

(a)     The date it is filed with the clerk of the trial court;

(b)     The date that an appellate court issues its mandate disposing of a timely direct appeal from the conviction; or

(c)     The date that the United States Supreme Court denies a timely petition for certiorari to review a decision affirming the conviction on direct appeal. The filing of a motion to reconsider denial of certiorari does not prevent a judgment from becoming final.

<u>See</u>, RCW 10.73.090.

In this case the Mandate was entered by the Washington State Court of Appeals on December 13, 2006.  Petitioner had until December 14, 2007, to file a personal restraint petition or

other collateral challenge in state court and he did not do so.

Federal Courts generally honor state procedural bars unless it would result in a "fundamental miscarriage of justice," or petitioner demonstrates cause and prejudice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Petitioner here cannot show cause and prejudice in state court.

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of his claims. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). Here, petitioner simply did not file a collateral challenge and instead filed a Federal Habeas petition.  He is now barred from filing a personal restraint petition.  Petitioner cannot show cause that excuses his procedural default in state court.  Accordingly, this petition is procedurally barred and should not be considered.

CONCLUSION

This petition is procedurally barred.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 25, 2008**, as noted in the caption.

DATED this 2, day of April, 2008.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 7